THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MANFRED H. WHITE, Defendant-Appellee (The Department of Mental Health and Developmental Disabilities, Intervenor-Appellant).

Fourth District   Nos. 4—87—0401, 4—87—0426 cons.

Opinion filed January 21, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Terence M. Madsen and Joan G. Fickinger, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:
At issue in this case is the question whether section 5—2—4 of the

Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4) permits the circuit court to order the Department of Mental Health and Developmental Disabilities (Department) to monitor compliance with rather extensive conditions imposed on an individual found not guilty by reason of insanity who is conditionally released from confinement in a Department facility. We hold that such an order is consistent with both the language of the relevant portions of section 5—2—4 and the legislative intent in enacting those portions of the statute.

On January 13, 1983, defendant Manfred White was charged by indictment with the murder of his wife, Patricia White. At a bench trial held May 31, 1983, defendant was found not guilty by reason of insanity. In an order entered October 26, 1983, the circuit court found defendant to be subject to involuntary admission and in need of mental health services on an inpatient basis. The circuit court therefore ordered defendant committed to an "appropriate facility as deemed by the [Department]" for an indefinite period of time, not to exceed 20 years. Following further proceedings which are not necessary to detail here, defendant filed a petition for discharge on April 3, 1987. A hearing on this petition was held on May 11, 1987. Attorneys from the Department and the Illinois Attorney General's office attended the hearing, but were not permitted to participate because no petition for intervention had been filed on the Department's behalf. In an order entered June 1, 1987, the circuit court found that defendant is in need of mental health services, but no longer in need of inpatient care. For this reason, the court ordered defendant conditionally released from the Department's custody subject to specified conditions.

The principal conditions stated in the court's June 1, 1987, order are: (1) defendant is not to leave the boundaries of Sangamon County without the permission of the court; (2) defendant is to have no contact with his three daughters or with two of his grandchildren; (3) defendant is to provide for release and waiver of his privileges of confidentiality with respect to records concerning his compliance with the terms of his conditional release, diagnosis, treatment and behavior so that such records may be released to the circuit court and to the McLean County State's Attorney; (4) defendant is not to use alcohol or nonprescribed drugs; (5) defendant is to submit to voluntary and random blood, breath, and/or urine tests to determine compliance with the condition that he not consume alcohol or use nonprescribed drugs; (6) defendant is to reside at a halfway house and abide by all of its regulations until he secures suitable employment, after which time he shall be allowed to reside in his own mobile home in Springfield; (7)

defendant is to endeavor to obtain appropriate services including but not limited to treatment and therapy with Mr. Gene Brodland, A.S.C.W. at the Southern Illinois University School of Medicine, with Alcoholics Anonymous, and in other programs that are recommended or prescribed by Brodland; (8) Brodland is "to be responsible to treat and develope [sic] a treatment plan for the Defendant" and to report to the Department every 60 days concerning defendant's progress; (9) the Department "shall be responsible to insure that the appropriate mental health services are offered to the Defendant, monitoring the Defendant's progress and compliance with this Order, and reporting to the Court and the State's Attorney of McLean County"; and (10) Brodland is to notify the Department, the circuit court, and the office of the McLean County State's Attorney if defendant fails to cooperate with or severs his relationship with Brodland "or in any other manner does not comply with this Order."

The order further provides that the Department "is specifically ordered to effectuate the treatment of this Defendant." Additionally, the order provides that the Department shall:

"[1.] Insure that each 60 days a report of the progress of the Defendant be provided to the Court from whatever agencies may be servicing the Defendant on an out-patient basis.

[2.] Report any non-compliance by the Defendant and with any of the terms and condition of this Order as soon as reasonably possible after such non-compliance.

[3.] Furnish to each agency providing services to the Defendant a copy of this Order, determine that the agency has on file the required waivers of confidentiality, notify the agency of the responsible representative of the Department of Mental Health who will be coordinating the Defendant's care and to whom reports are to be made.

[4.] Notify the Court and State's Attorney of McLean County of the address of the Defendant upon changes, thereof."

The court found the above conditions are "appropriate and required to insure the proper treatment program for the Defendant, to protect the public and insure that the [Department] will supervise the Defendant during his period of release, monitor his compliance or noncompliance with these conditions and report his progress to the Court." The duration of defendant's conditional release is five years unless modified at a future date, but in no event is it to exceed eight years. Defendant is to be returned to a Department facility if he violates any of the terms and conditions of his conditional release or if

he is discharged from the halfway house to a placement other than his private home without prior court approval of his subsequent placement.

On June 12, 1987, the Department moved for leave to intervene in this case. The circuit court held that although the intervention sought was by its nature intervention as of right, the Department's motion for leave to intervene was untimely. Therefore, in an order entered June 15, 1987, the circuit court denied the Department's motion. The Department appeals both the June 1, 1987, order providing for defendant's conditional release and the June 15, 1987, order denying its motion for leave to intervene.

▪ Since the Department was not a party to the circuit court proceedings, we must consider whether we have jurisdiction to entertain this appeal before considering its merits. (See *Pruitt v. Pruitt* (1984), 129 Ill. App. 3d 50, 471 N.E.2d 1051.) A nonparty to an action has standing to appeal an order entered in the action if it has a direct, immediate and substantial interest in the controversy. The nonparty's interest in the controversy must be one which is either prejudiced by the judgment or which would be benefitted by reversal of the judgment. *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 359 N.E.2d 109.

▪ In the present case, the circuit court's order requires the Department to assume fairly extensive responsibilities with respect to monitoring defendant's conduct and treatment subsequent to his conditional release. Employees of the Department could conceivably be held in contempt of court if the Department fails to comply with the portions of the circuit court's order which are directed to it. For these reasons, we hold that the Department has a sufficiently direct, immediate and substantial interest in the terms of defendant's conditional release to confer upon it standing to appeal those portions of the circuit court's order which affect the Department. Moreover, the fact that the Department appeals a circuit court order which denied a motion for leave to intervene also confers upon the Department standing to appeal. *Koester v. Yellow Cab Co.* (1974), 18 Ill. App. 3d 56, 309 N.E.2d 269.

The contentions of the parties center on the interpretation to be accorded the following portions of section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4):

"Proceedings after Acquittal by Reason of Insanity. (a) \* \* \* \* \* \*

\* \* \* If [a defendant found not guilty by reason of insanity] is found to be in need of mental health services, but not on an in-

patient care basis, the Court shall conditionally release the defendant, under such conditions as set forth in this Section as will reasonably assure the defendant's satisfactory progress in treatment or rehabilitation and the safety of the defendant or others.

\* \* \*

(C) 'In need of mental health services on an outpatient basis' means: a defendant who has been found not guilty by reason of insanity who is not subject to involuntary admission or in need of mental health services on an inpatient basis, but is in need of outpatient care, drug and/or alcohol rehabilitation programs, community adjustment programs, individual, group, or family therapy, or chemotherapy.

(D) 'Conditional Release' means: the release from the custody of either the Department of Mental Health and Developmental Disabilities or the custody of the Court of a person who has been found not guilty by reason of insanity under such conditions as the court may impose which reasonably assure the defendant's satisfactory progress in treatment or rehabilitation and the safety of the defendant and others. The Court shall consider such terms and conditions which may include, but need not be limited to, outpatient care, alcoholic and drug rehabilitation programs, community adjustment programs, individual, group, family, and chemotherapy, periodic checks with the legal authorities and/or the Department of Mental Health and Developmental Disabilities. The person or facility rendering the outpatient care shall be required to periodically report to the Court on the progress of the Defendant. Such conditional release shall be for a period of five years, unless the defendant, the person or facility rendering the treatment, therapy, program or outpatient care, or the State's attorney petitions the Court for an extension of the conditional release period for an additional three years. \* \* \*

\* \* \*

(h) \* \* \* If the Court finds that the defendant is in need of mental health services, and no longer in need of inpatient care, it shall order the facility director to release the defendant under such conditions as the Court deems appropriate and as provided by this Section. \* \* \*

\* \* \*

(k) In the event of a conflict between this Section and the Mental Health and Developmental Disabilities Code or the Men-

tal Health and Disabilities Confidentiality Act, the provisions of this Section shall govern."

The Department contends that in entering its June 1, 1987, order, the circuit court exceeded its authority as defined in section 5—2—4, because the legislature did not intend that the Department bear substantial overall responsibility for the care and supervision of persons conditionally released from the Department's custody and care. Specifically, the Department contends that the use of the term "release from custody" in subsection (a)(1)(D) of section 5—2—4 "contemplates the termination of [the Department's] responsibility for the conditional release." The Department further argues that the requirement of the circuit court's order that the Department monitor the defendant's progress violates the legislative intent that the entity providing outpatient care be charged with the duty of monitoring a defendant's progress. The Department also contends there is a clear distinction between an order requiring the "periodic checks" mentioned in subsection (a)(1)(D) and an order which effectively requires the Department to assume full responsibility for the treatment and conduct of a defendant who is conditionally released.

The Department further argues that its function is not to protect the public but to afford appropriate individuals a period of concentrated therapy. It asserts that the circuit court's order, however, casts for the Department the role of supervising a defendant found not guilty by reason of insanity to the end of protecting the public. It contends that the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, pars. 1—100 through 6—107) imposes upon it no such responsibilities. The Department concludes by stating that it has no mechanism for monitoring individuals who are conditionally released, that it would be impracticable to construct such a mechanism, and that to the extent it is unable to construct such a mechanism, it would be forced to rely on other service providers which it neither funds nor monitors for information regarding the treatment and conduct of individuals who are conditionally released.

The State contends that under the circuit court's order, the Department "would merely have to make sure that any agency providing services to Mr. White has a copy of the court order and the required waivers. After that [the Department] would receive reports from those agencies and relay them on to the court." The State further contends that in the present case, the circuit court sought to comply with the intent of section 5—2—4 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4) by ordering defendant's release, but felt that some involvement of the Department was warranted because the Depart-

ment is responsible to the court under the terms of section 5—2—4 and is better able than the court to analyze the defendant's progress. The State also argues that the Department's continued involvement in defendant's treatment would help to insure his compliance with the conditions of his release. Finally, the State notes that the terms and conditions which may be imposed on a conditionally released defendant are not limited to those specified in subsection (a)(1)(D) of section 5—2—4.

In its reply argument, the Department reiterates its contention that its role with respect to persons found not guilty by reason of insanity who are conditionally released from the Department's custody is to be merely periodic. It also asserts that under the court order here at issue, the Department's responsibilities are much greater than merely receiving reports on defendant from service providers and relaying them to the circuit court. The Department contends that instead, the circuit court's order requires it to assume total responsibility for monitoring defendant's conduct.

In interpreting statutes, the paramount objective is to ascertain and give effect to the legislative intent. (*People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174.) The most important consideration in determining legislative intent is the statutory language. (*Boykin*, 94 Ill. 2d 138, 445 N.E.2d 1174.) Where the language of a statute is susceptible to two different interpretations, the statute's legislative history is also relevant. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.

As the State points out, section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4) does not limit the terms and conditions which may be imposed on a defendant found not guilty by reason of insanity who is conditionally released to the items stated therein. Moreover, the statute does not define the nature of the "person or facility" which is to provide outpatient care pursuant to the statute. Presumably the provider of such services could be a facility operated by the Department. The Department's argument that there is no provision in the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, pars. 1—100 through 6—107) which requires the Department to provide outpatient services is unavailing, since subsection (k) of section 5—2—4 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4(k)) specifies that in the event of conflict between that section and the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, pars. 1—100 through 6—107), section 5—2—4 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4) shall govern. Thus section 5—2—4 may require the De-

partment to assume some degree of responsibility for individuals who are conditionally released, notwithstanding the lack of any such requirement in the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985,ch. 91½, pars. 1—100 through 6—107).

■ We are also unpersuaded by the Department's argument that the definition of conditional release as the release of a defendant from the Department's custody means that the Department's responsibility for persons found not guilty by reason of insanity terminates upon the conditional release of such persons. Although the word "custody" may mean, depending on its context, either physical confinement or subjection to lesser restraints (see *People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 316 N.E.2d 769), it is apparent that as utilized in subsection (a)(1)(D) of section 5—2—4, the word connotes physical confinement. Subsection (a)(1)(D) provides that a defendant who is conditionally released after being found not guilty by reason of insanity may be subjected to restraints and controls other than confinement for a period of as long as eight years following his conditional release. Therefore, "release from *** custody" as used in the first sentence of that subsection cannot mean the release of a defendant from all constraints. Rather, as used in the first sentence of subsection (a)(1)(D), "release from *** custody" means release from physical confinement in a Department facility. It follows that the release of a defendant from the Department's custody does not necessarily connote a complete termination of the Department's responsibility for that individual.

■ The chief ambiguity with respect to subsection (a)(1)(D) of section 5—2—4 is the intended scope and purpose of the "periodic checks with *** the Department of Mental Health and Developmental Disabilities" which that subsection provides the circuit court may impose as a term of conditional discharge. This ambiguity is resolved by reference to the legislative history of the 1980 amendment of section 5—2—4 (Pub. Act 81—1497, 1980 Ill. Laws 2530, 2531), which added present subsection (a)(1)(D) to that section. During the House debate concerning the 1980 amendment of section 5—2—4, the House sponsor of the amendment, Representative Katz, stated:

"They may also put [a defendant found not guilty by reason of insanity] on an outpatient basis. But rather than letting the individual simply float around in the community and be unknown to everyone until he commits a violent crime or act again, the Superintendent of the Department of Mental Health follows that individual. He is required to report under conditions that the Department feels is desirable and in fact, in some instances

as it has worked out in Maryland, they have many years experience with the individuals who have been fitted to this category. They are able to determine that the same kind of symptoms are reoccurring that characterize the original time that the first act was committed and they then can reinstitutionalize the individual until the individual is able to work out the problem and is safe to be released. (81st Ill. Gen. Assem., House Proceedings, May 17, 1979, at 102 (statements of Representative Katz).)

During the same debate, the following colloquy occurred between Representative Katz and Representative Van Duyne:

"VAN DUYNE: Well, two points. First of all when they release this person conditionally, does anybody follow them around? In other words, they're on their own, right?

KATZ: No. When they release the person conditionally the condition is that they have to report in, either they may be put in *** confined in an institution if the Department of Mental Health thinks that's where they ought to be or ***.

VAN DUYNE: Who goes home with them?

KATZ: *** May I finish the answer? Or if they release them as an out patient, the individual will be required to report in at whatever date the Department of Mental Health says. It may be once a week ***." (81st Ill. Gen. Assem., House Proceedings, May 17, 1979, at 107-08.)

The legislative history just quoted makes it clear the legislature intended that through the mechanism of periodic checks, the Department engage in rather extensive monitoring and supervision of the conduct and activities of individuals who are conditionally released after being found not guilty by reason of insanity.

Through the mechanism of periodic checks with the Department, the Department will be able to monitor defendant's compliance with all of the conditions set forth in the order here at issue. For instance, during defendant's checks with the Department, the Department can question defendant concerning his travels and activities during the period subsequent to the previous check in order to ascertain that he has remained within Sangamon County, that he has had no contact with his daughters or grandchildren and that his address has not changed. The Department can also require defendant to bring with him a report from the halfway house concerning his behavior during the preceding period (if defendant is still residing at the halfway house), as well as reports from Brodland concerning defendant's participation in treatment programs. The Department can also administer random blood, breath and/or urine tests to defendant during his peri-

odic checks with the Department. Although the circuit court's order does provide the Department is "to insure that appropriate mental health services are provided defendant," and that the Department is to effectuate treatment of defendant, the order also provides that Brodland is to "be responsible to treat and develope [sic] a treatment plan for Defendant." Read in the context of the entire order, the provisions stating the Department is to insure defendant is afforded appropriate mental health services and is to effectuate treatment of defendant merely require the Department to monitor the defendant's compliance with Brodland's plan of treatment and to secure necessary services for defendant from an alternate source in the event Brodland for any reason fails to provide or obtain proper treatment for the defendant.

Both of the two cases on which the Department principally relies in support of its position—*People v. Schyve* (1983), 112 Ill. App. 3d 777, 445 N.E.2d 1260, and *People v. Roush* (1982), 111 Ill. App. 3d 618, 444 N.E.2d 625—are factually distinguishable from the case at bar. In both of those cases, the circuit court prescribed extensive guidelines with respect to the care of persons found not guilty by reason of insanity who were *confined to Department facilities as inpatients*. No statutes permitted the circuit court to prescribe such guidelines. By contrast, section 5—2—4 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—4) specifically authorizes the circuit court to prescribe extensive terms and conditions governing the conduct and treatment of defendants found not guilty by reason of insanity who are conditionally released and to assign to the Department the task of monitoring compliance with the conditions through the mechanism of periodic checks. Thus, unlike the orders involved in *Schyve* and *Roush*, orders of the type here at issue are specifically provided for by statute. Likewise, in *People v. Hampton* (1983), 121 Ill. App. 3d 273, 459 N.E.2d 985, and *People v. Lang* (1978), 62 Ill. App. 3d 688, 378 N.E.2d 1106, *affirmed in part & reversed in part* (1979), 76 Ill. 2d 311, 391 N.E.2d 350, the circuit court orders at issue were not authorized by statute.

■ In sum, the circuit court's June 1, 1987, order is not contrary to either the language of the relevant statute or the intention of the legislature in enacting that statute. We therefore affirm the order of conditional release from which the Department appeals.

■ The Department further argues that the circuit court abused its discretion in denying its motion for leave to intervene. Since we have held that the Department has standing to appeal those portions of the circuit court's June 1, 1987, order which are directed to the Department and the issue involved is purely one of law, the Department

would gain nothing as a result of a decision in its favor as to the intervention issue, and any opinion on that issue would have advisory effect only. The intervention issue is not one of those with respect to which all similar cases will become moot before they reach this court, and it does not fall into any of the other recognized exceptions to the mootness doctrine. (See *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 437 N.E.2d 638.) Therefore, we hold that the issue of whether the circuit court abused its discretion in denying the Department's motion for leave to intervene is moot, and vacate the circuit court's denial of the Department's motion for leave to intervene without comment as to the merits of the motion. (See *Madison Park Bank*, 91 Ill. 2d 231, 437 N.E.2d 638.) Nothing in this opinion is intended to prejudice a new motion by the Department for leave to intervene if at a future date the circuit court imposes different or additional responsibilities on the Department with respect to supervision or treatment of defendant.

The circuit court's order of June 1, 1987, which conditionally discharged defendant, is affirmed; the circuit court's order of June 15, 1987, which denied the Department's motion for leave to intervene, is vacated.

Affirmed in part; vacated in part.

GREEN, P.J., and SPITZ, J., concur.