In re Leon EVANS.

Leon Evans, Executive Director of the Center for Health Care Services and Bexar County Board of Trustees for Mental Health and Mental Retardation Services d/b/a the Center for Health Care Services, Appellants,

v.

The State of Texas and Nathan Dale Campbell, Appellees.

Nos. 14–03–01361–CV, 14–03–00848–CV, 14–03–00849–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 18, 2004.

See also 85 S.W.3d 176, 118 S.W.3d 788.

Laura Anne Cavaretta, Jerry A. Gibson Kathleen Cordova, San Antonio, for appellants.

James M. Leitner, Kevin P. Keating, Dist. Atty., Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

In this consolidated case, we address an issue of apparent first impression-whether section 574.037 of the Texas Health and Safety Code applies to a proceeding under article 46.03, section 4(d)(5) of the Texas Code of Criminal Procedure. We hold that it does and that, under section 574.037 of the Texas Health and Safety Code, the trial court lacked authority to designate appellants, out-of-region parties, to be responsible for rendering outpatient mental health services to Nathan Dale Campbell. Accordingly, we reverse the trial court's June 30, 2003 commitment order, remand for further proceedings consistent with this opinion, and conditionally grant mandamus relief vacating the trial court's judgment holding the out-of-region provider in contempt of court for failure to comply with the trial court's order compelling provision of these outpatient mental health services.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Nathan Dale Campbell was charged by indictment with aggravated kidnapping and aggravated assault after he assaulted his girlfriend and attempted to remove her eyeballs from their sockets. After a bench trial in 1997, the trial court found him not guilty by reason of insanity. Campbell was then automatically committed to Vernon State Hospital's maximum security facility. *Campbell v. State*, 85 S.W.3d 176, 178 (Tex.2002). Campbell was later transferred to Rusk State Hospital. *Id.* In May of 2000, the superintendent of

Rusk State Hospital submitted a report to the trial court stating that, according to Campbell's attending psychiatrist, continued inpatient treatment of Campbell was no longer necessary. *Campbell v. State*, 68 S.W.3d 747, 751 (Tex.App.-Houston [14th Dist.] 2001), *aff'd*, 85 S.W.3d 176 (Tex.2002). The hospital superintendent recommended that the trial court order Campbell to participate in outpatient mental health services rather than inpatient services. *Id.* at 751–52. The trial court ordered two psychiatrists to conduct psychiatric evaluations of Campbell, and these physicians disagreed as to whether Campbell should continue with inpatient treatment. *Id.* at 752.

The trial court ordered the Mental Health and Mental Retardation Authority of Harris County ("Harris County MHMRA") to make a recommendation for Campbell's treatment. *Id.* In response, a physician for the Harris County MHMRA informed the court that Campbell's transition from inpatient to outpatient care required "a highly structured program with daily monitoring" and that Harris County MHMRA was not able to provide such a program. *Id.* After conducting a hearing under the Mental Health Code, the trial court ordered Campbell committed to Rusk State Hospital for another year. *Id.* at 752, 757. Campbell was later transferred to Kerrville State Hospital. The trial court ordered Campbell committed to extended inpatient mental services for another year in 2001, and again in 2002. *Campbell v. State*, 118 S.W.3d 788, 793 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Campbell*, 68 S.W.3d at 752–53.

In a letter dated April 30, 2003, the Chief Executive Officer of the Kerrville State Hospital advised the trial court that Campbell had "reached maximum benefits [sic] from his stay at Kerrville State Hospital and can continue treatment in a less

restrictive setting." The Chief Executive Officer of Kerrville State Hospital and a psychiatrist there recommended that treatment be provided to Campbell on a supervised outpatient basis, provided he participates in a regimen of medical, psychiatric, or psychological care and treatment. The Chief Executive Officer of Kerrville State Hospital filed a certificate with the clerk of the trial court. After receiving this certificate and before the expiration of the previous commitment order, the trial court held a hearing. This hearing was conducted on May 27, 2003, without any notice to appellant and petitioner Leon Evans, Executive Director of the Center for Health Care Services (hereinafter "Evans") or to appellant Bexar County Board of Trustees for Mental Health and Mental Retardation Services d/b/a the Center for Health Care Services (hereinafter the "Bexar County Center"). At this hearing, the trial court determined that Campbell should be directed to participate in outpatient mental health services and signed an order to this effect. In this May 27, 2003 order, the trial court designated "Sherry Bailey, Bexar County Mental Health Services Program Manager" as the ˙person responsible for providing the outpatient services described in the order. In the same order, the trial court also ordered Campbell to report in person to the trial court not less than once per month beginning June 30, 2003.

The Bexar County Center filed a motion for reconsideration of the May 27, 2003 order in the trial court asserting, among other things, the following:

● The Bexar County Center currently has a waiting list for its priority population patients.

● Ordering Campbell to receive extended mental health services in Bexar County, Texas will deny Campbell the necessary care and treatment.

● The Bexar County Center was not advised of the May 27, 2003 hearing and was not given an opportunity to advise the trial court that the Bexar County Center lacked the resources to accept Campbell for extended mental health services.

● Section 574.037(a) of the Texas Health and Safety Code applies and requires that the person designated under the circumstances of this case be the facilities administrator of a department facility or the facility administrator of a community center that provides mental health services in the region in which the committing court is located.

● Although Sherry Bailey is an employee of the Bexar County Center, she is not the facility administrator of the Bexar County Center; rather, Evans is the facility administrator of the Bexar County Center.

● The Bexar County Center does not provide mental health services in the region in which the trial court is located—Harris County; therefore, the trial court's May 27, 2003 order violates section 574.037(a) of the Texas Health and Safety Code.

● The Bexar County Center first became aware that the May 27, 2003 order had been signed when it was given a copy of the order on June 18, 2003, by an advocacy group.

The Bexar County Center also filed a memorandum of law in support of its motion for reconsideration, in which it requested that the trial court amend its May 27, 2003 order so that Bailey and the Bexar County Center would no longer be responsible for providing outpatient mental health services to Campbell.

On June 30, 2003, the trial court conducted a hearing on the Bexar County Center's motion for reconsideration, in which attorneys for the Bexar County

Center, the State of Texas, and Campbell participated. The Bexar County Center reasserted the arguments in the motion for reconsideration. To support its position, the Bexar County Center submitted an affidavit from Bailey in which she states that she did not consent to be designated as the person responsible for providing outpatient services to Campbell. The Bexar County Center also argued that, though the trial court was holding a hearing under article 46.03, section 4(d)(5) of the Texas Code of Criminal Procedure [1], according to that statute, the hearing must be conducted under the provisions of the Texas Mental Health Code and, therefore, the requirements of section 574.037(a) [2] apply. The Bexar County Center also argued that article 46.03 is silent on the issue of who can be ordered to provide outpatient mental health services.

After the hearing on June 30, 2003, the trial court signed a modified commitment order that refers to the Bexar County Center's motion for reconsideration. This order contains the following findings:

(1) The trial court has state-wide jurisdiction in connection with "this criminal matter";

(2) Appropriate services are available to Campbell through the Bexar County Center; and

(3) Section 574.037(a) does not limit the trial court's authority to place Campbell in an appropriate outpatient commitment under article 46.03, section (4)(d).

In this order, the trial court also modified its prior commitment order in the following ways:

(1) The trial court substituted Evans for Bailey as the person responsible for providing the outpatient services;

(2) The trial court ordered Evans or his designee to assess Campbell's current needs; and

(3) The trial court ordered Evans or his designee, no later than July 14, 2003, to submit a written, comprehensive community placement program that specifies the outpatient services required by Campbell and designates a residential placement for Campbell.

On July 9, 2003, Evans and the Bexar County Center filed their notice of appeal from the trial court's June 30, 2003 commitment order. In a letter dated July 11, 2003, Dr. Dean Faulk of the Bexar County Center outlined the treatment and care Campbell needs in an outpatient setting. In that letter, Faulk states that the Bexar County Center does not currently have the resources available to provide these outpatient services.

Shortly thereafter, on July 21, 2003, Evans and the Bexar County Center filed a motion for reconsideration of the June 30, 2003 order, stating that, under section 574.037, the trial court could not order Evans to provide outpatient services without his consent and stating that Evans has not consented. In the motion, they also pointed out that the trial court ordered Evans and the Bexar County Center to provide outpatient services without inquiring as to whether they could provide the services Campbell required and that, in fact, the Bexar County Center cannot provide all of the necessary services. Attached to this motion is an affidavit from Evans in which he testifies (1) the Bexar County Center is not located in the region

---

1. All references in this opinion to any part of an article 46.03 refer to the corresponding part of article 46.03 of the Texas Code of Criminal Procedure.

2. All references in this opinion to any "section"—other than a section of article 46.03— refer to the corresponding section of the Texas Health and Safety Code.

of the committing court (Harris County); (2) Evans does not consent to be the person responsible for providing outpatient services to Campbell; and (3) the Bexar County Center does not currently have the resources to treat Campbell.

A few days later, on July 24, 2003, Evans and the Bexar County Center filed a petition for writ of mandamus in this court, asking that we compel the trial court to set aside the May 27, 2003 and June 30, 2003 orders and asserting that the trial court lacked authority to order the Bexar County Center and Evans to provide outpatient mental health services to Campbell. On August 1, 2003, the trial court signed a show-cause order stating that it had ordered Evans to file a community placement program plan specifying: (1) the specific services Campbell requires to be in compliance with the court's commitment order, (2) where such services will be immediately provided, and (3) the name and address of the specific residential placement facility in which Campbell will be immediately placed. The trial court stated that, as of August 1, 2003, Evans had not complied with this order, and the court ordered Evans to appear on August 18, 2003, to show cause why he should not be held in contempt for disobeying the court's June 30, 2003 order in this regard. Evans filed a response to the trial court's show-cause order asserting, among other things, that the trial court had no authority to order Evans· or the Bexar County Center to provide Campbell with outpatient mental health services.

The trial court conducted the show-cause hearing on the designated date and on August 19, 2003, the trial court signed a contempt judgment in which the trial court makes the following findings:

(1) Evans failed to show cause why the trial court should not find him in contempt.

(2) The allegations in the show-cause order are true, and Evans has not complied with the trial court's June 30, 2003 order.

(3) Despite his claims to the contrary, Evans has adequate facilities at his disposal and is currently able to comply with the June 30, 2003 order.

(4) Evans is willfully and wantonly disobeying the trial court's June 30, 2003 order.

The trial court found Evans in contempt of court and ordered him confined in Harris County Jail until he complied with the June 30, 2003 order. On August 21, 2003, an agreement was reached under which the trial court released Evans from confinement and found that he had purged himself of the contempt without prejudice to his and the Bexar County Center's pending appeal of the June 30, 2003 order.

On September 25, 2003, another panel of this court denied the petition for writ of mandamus filed by Evans and the Bexar County Center, finding that Evans and the Bexar County Center had an adequate remedy by means of their appeal. Evans later filed a petition for writ of mandamus asking this court to direct the trial court to vacate the contempt judgment against him. Before oral argument, this court consolidated this second mandamus proceeding with the appeal by Evans and the Bexar County Center.

## II. ISSUES PRESENTED

In their appeal, Evans and the Bexar County Center (collectively referred to hereinafter as the "Bexar County Parties") present the following issues:

(1) Did the trial court violate Evans's due process rights?

(2) Did the trial court lack authority to designate Evans as a person responsible for providing outpatient mental

health services to Campbell and to order the Bexar County Center to provide outpatient mental health services to Campbell?

(3) Is the evidence legally and factually insufficient to support the commitment orders?

(4) Is the commitment order improper because the trial court did not comply with the procedural requirements of the Texas Mental Health Code?

The State asserts that this court lacks appellate jurisdiction.

In his petition for writ of mandamus, Evans presents the following issues:

(1) Did the trial court have jurisdiction to enforce the June 30, 2003 order by holding Evans in contempt when the Fourteenth Court of Appeals had jurisdiction over the validity of this order?

(2) Is the June 30, 2003 order void?

(3) Is the June 30, 2003 order improper because it is not supported by the evidence and because the trial court did not comply with the requirements of the Texas Mental Health Code?

(4) Is the June 30, 2003 order improper because Evans was deprived of due process?

(5) Can the trial court use its contempt power to enforce the June 30, 2003 order even though that order is void because the trial court lacked authority to enter it?

(6) Can the trial court use its contempt power to enforce the June 30, 2003 order even though Evans established that he has complied with that order to the extent that he can?

(7) Can the trial court use its contempt power to enforce the June 30, 2003

order even though that order is vague and ambiguous?

## III. STANDARD OF REVIEW

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; rather, we must yield to the plain sense of the words the Legislature chose. *See id.*

## IV. ANALYSIS

### A. Does this court have appellate jurisdiction?

The State asserts that we lack appellate jurisdiction for the following stated reasons: (1) the Bexar County Parties were not parties in the trial court, (2) the Bexar County Parties have no standing to appeal, (3) the doctrine of virtual representation does not apply, and (4) the commitment order lacks finality. These arguments lack merit.

Even if the doctrine of virtual representation does not apply, courts have held that nonparties have a right to appeal from a judgment if they clearly have an interest in that judgment and if they are bound by the judgment. *See The Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex.2000) (stating that a person whose

interest is prejudiced by an error in a judgment has standing to appeal the judgment and citing *Jernigan* case with approval); *Jernigan v. Jernigan*, 677 S.W.2d 137, 139–40 (Tex.App.-Dallas 1984, no writ) (holding nonparties had right to appeal trial court's judgment that bound the nonparties and affected an interest of the nonparties that appeared in the trial court's record); *Department of Children and Families v. Morrison*, 727 So.2d 404, 405 (Fla.Ct.App.1999) (holding nonparty agency had standing to appeal order committing to agency's custody an individual found incompetent to stand trial for capital murder; agency asserted trial court lacked authority to issue commitment order); *People v. White*, 165 Ill.App.3d 249, 116 Ill.Dec. 282, 518 N.E.2d 1262, 1265 (Ill.Ct. App.1988) (holding nonparty department of mental health had standing to appeal commitment order regarding person found not guilty by reason of insanity because department had direct interest that was affected by commitment order and because employees of the department conceivably could be held in contempt of court for failing to comply with the order). The Bexar County Parties assert that, under the applicable statutes, the trial court lacked authority to order them to provide outpatient mental health services to Campbell. We conclude that the record shows the Bexar County Parties have a direct interest in this issue that was decided by the trial court's June 30, 2003 order in a way that binds them. *See West Orange–Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558, 583–84 (Tex.2003) (holding school districts had standing to bring claims against the State asserting that school financing system had become unconstitutional); *Nootsie, Ltd. v. Williamson Cty. App. Dist.*, 925 S.W.2d 659, 662 (Tex.1996) (holding that appraisal district had standing based on its interest in the validity of the statute that it is charged with imple-

menting); *Robbins v. Limestone Cty.*, 114 Tex. 345, 268 S.W. 915, 917 (1925) (holding a county and a road district had standing to sue state highway commission and county tax collector based on their interest in and control over the public roads of the county). Therefore, we hold that the Bexar County Parties have standing to appeal the June 30, 2003 order.

■ The State also claims we lack jurisdiction because the trial court's commitment order is not final; however, finality is not required because the Bexar County Parties have appealed under a statute that explicitly provides for an interlocutory appeal from an order requiring court-ordered mental health services or from a modification of such an order. *See* TEX. HEALTH & SAFETY CODE § 574.070. Accordingly, we have appellate jurisdiction to determine whether the trial court had authority to order the Bexar County Parties to provide outpatient mental health services, as set forth in the June 30, 2003 order.

**B. Did the trial court lack authority to designate Evans as a person responsible for providing outpatient mental health services to Campbell and to order the Bexar County Center to provide outpatient mental health services to Campbell?**

The Bexar County Parties assert that, under section 574.037, the trial court lacked authority (1) to designate Evans as a person responsible for providing outpatient mental health services to Campbell and (2) to order the Bexar County Center to provide these services. To address this issue, we must determine whether section 574.037 applies.

Article 46.03, section 4 contains the following relevant language:

(d) **Act, Attempt, or Threat of Serious Bodily Injury; Special Commitment; Out-patient Supervision; Re-**

**commitment.** (1) Civil Commitment or Automatic Commitment for Evaluation. If a defendant is found not guilty by reason of insanity in the trial of a criminal offense and the court determines that the defendant committed an act, attempt, or threat of serious bodily injury to another person, the trial court may transfer the defendant to the appropriate court for civil commitment proceedings on receipt of that court's written consent to the transfer or may retain jurisdiction over the defendant as provided by this subdivision. A trial court that transfers a defendant to the appropriate court for civil commitment proceedings shall order the defendant detained in jail or other suitable place pending the initiation of appropriate civil proceedings. A trial court that does not transfer a defendant to the appropriate court for civil commitment proceedings under this subdivision shall retain jurisdiction over the defendant and shall proceed as provided by this subsection . . .

. . .

(4) **Out-patient Supervision.** If at the time of the evaluation as provided in Subdivision (1) of this subsection prior to the hearing on involuntary commitment, the report of the defendant's present mental condition includes a recommendation that the person acquitted by reason of insanity meets the criteria for involuntary commitment but that such treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care or treatment, and the court finds that the acquitted person does meet those criteria, the court may order the acquitted person to participate in that prescribed regimen of medical, psychiatric, or psychological care or treatment. The court may at any time modify or revoke the out-patient regimen of medical, psychiat-

ric, or psychological care or treatment pursuant to the requirements of the Mental Health Code or the Mentally Retarded Person's Act. The court shall review the continuing need for such order at the completion of 90 days from the issuance of the initial out-patient order and no less often than once every 12 months for subsequent out-patient orders pursuant to the requirements of the Mental Health Code or Mentally Retarded Person's Act.

(5) **Judicial Release.** A person acquitted by reason of insanity and committed to a mental hospital or other appropriate facility pursuant to Subdivision (3) of this subsection may only be discharged by order of the committing court in accordance with the procedures specified in this subsection. If at any time prior to the expiration of a commitment order the superintendent of the facility to which the acquitted person is committed determines that the person has recovered from his mental condition to such an extent that he no longer meets the criteria for involuntary commitment or that he continues to meet those criteria but that treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care and treatment, the director of the facility shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. If the superintendent of the facility intends to recommend release, out-patient care, or continued in-patient care upon the expiration of a commitment order, the superintendent shall file a certificate to that effect with the clerk of the court that ordered the commitment at least 14 days prior to the expiration of that order. The clerk shall notify the district or county attorney upon receipt of such

certificate. Upon receipt of such certificate or upon the expiration of a commitment order, the court shall order the discharge of the acquitted person or on the motion of the district or county attorney or on its own motion shall hold a hearing, prior to the expiration of the commitment order, conducted pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act as appropriate, to determine if the acquitted person continues to meet the criteria for involuntary commitment and whether an order should be issued requiring the person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis as provided in Subdivision (4) of this subsection. If the court determines that the acquitted person continues to meet the criteria for involuntary commitment and that outpatient supervision is not appropriate, the court shall order that the person be returned to a mental hospital or other appropriate in-patient or residential facility. If the court finds that continued in-patient or residential care is required, the commitment will continue until the expiration of the original order, if one is still in effect, or the court shall issue a new commitment order of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act.

TEX.CODE CRIM. PROC. art. 46.03, § 4(d) (emphasis added).

Section 574.037 is contained in the Texas Mental Health Code, chapter 574, under Subchapter C, which is entitled, "Proceedings for Court Ordered Mental Health Services." *See* TEX. HEALTH & SAFETY CODE § 574.037. This section reads in pertinent part:

(a) The court, in an order that directs a patient to participate in outpatient mental health services, shall identify a person who is responsible for those services. The person identified must be the facility administrator or an individual involved in providing court-ordered outpatient services. A person may not be designated as responsible for the ordered services without the person's consent unless the person is the facility administrator of a department facility or the facility administrator of a community center that provides mental health services in the region in which the committing court is located.

TEX. HEALTH & SAFETY CODE § 574.037(a).

■ In its June 30, 2003 order, the trial court identifies Evans as the person responsible for providing the mental health services it ordered for Campbell. Evans did not consent to this designation, and though Evans is the facility administrator of the Bexar County Center, the Bexar County Center does not provide mental health services in the region in which the trial court is located. Therefore, the June 30, 2003 order does not comply with section 574.037. The State does not contend otherwise; rather, the State argues that section 574.037 does not apply and that under article 46.03, section 4(d), the trial court had authority to order any mental health agency in Texas to provide outpatient mental health services, without the agency's consent. In the June 30, 2003 order, the trial court expressly adopted the State's statutory construction in this regard. We disagree and hold that, under the unambiguous language of the statutes in question, section 574.037 applies to the proceeding under article 46.03, section 4(d)(5) in which the trial court signed the June 30, 2003 order.

Even though the commitment proceedings in this case resulted from a criminal prosecution, these commitment proceedings are civil in nature. *Campbell v. State,*

85 S.W.3d 176, 180 (Tex.2002). Under article 46.03, section 4(d)(5), the superintendent of Kerrville State Hospital recommended outpatient care for Campbell and filed a certificate with the trial court. After receiving this certificate, the trial court conducted a hearing before the expiration of the commitment order, to determine if Campbell continues to meet the criteria for involuntary commitment and whether the trial court should order Campbell to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an outpatient basis. The hearings that resulted in the June 30, 2003 commitment order were conducted under article 46.03, section 4(d)(5). Under the unambiguous language of this statute, the trial court must conduct these hearings "pursuant to the provisions of the Mental Health Code...." TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(5); *Campbell*, 85 S.W.3d at 181 (holding that article 46.03, section 4(d)(5) hearing was required to be conducted pursuant to the Texas Mental Health Code). The Texas Supreme Court already has decided that not all provisions of the Texas Mental Health Code apply to a proceeding under article 46.03, section 4(d)(5); only those Mental Health Code provisions pertinent to such a proceeding apply. *See Campbell*, 85 S.W.3d at 181–82. The parties have not cited and we have not found any cases addressing the issue of whether section 574.037 is a provision pertinent to an article 46.03, section 4(d)(5) proceeding, and therefore applies to such a proceeding. Based on the unambiguous language of the Texas Mental Health Code and article 46.03, we conclude that section 574.037 is a provision of the Texas Mental Health Code pertinent and applicable to a proceeding under article 46.03, section 4(d)(5).

Section 574.037 is contained in a subchapter entitled, "PROCEEDINGS FOR COURT–ORDERED MENTAL HEALTH SERVICES." *See* TEX. HEALTH & SAFETY CODE §§ 574.031–.037. Courts of appeals have determined that five of the seven sections in this subchapter apply to proceedings under article 46.03 regarding court-ordered mental health services. *See id; Campbell*, 118 S.W.3d at 801–03 (holding §§ 574.032, 574.035, and 574.036 applied to one of Campbell's prior hearings under article 46.03, section 4(d)(5)); *Campbell*, 68 S.W.3d at 757 n. 3 (stating that § 574.031 applied to one of Campbell's prior hearings under article 46.03, section 4(d)(5)); *In re G.B.R.*, 953 S.W.2d 391, 395–96 (Tex.App.-El Paso 1997, no pet.) (applying §§ 574.034 and 574.035 to hearing under article 46.03, section 4(d)(4)). Section 574.037 requires a court that orders a person to participate in outpatient mental health services, to identify in its order the person responsible for these services, and this section places restrictions as to whom the court may designate as a person responsible for these services. *See* TEX. HEALTH & SAFETY CODE § 574.037(a).

In a prior appeal by Campbell from the trial court's May 2002 commitment order, both Campbell and the State generally agreed, and this court held, that sections 574.032, 574.035, and 574.036 applied to the 2002 hearing under article 46.03, section 4(d)(5). *See Campbell*, 118 S.W.3d at 801–03. Section 574.035 outlines the circumstances under which the trial court may order extended inpatient mental health services or extended outpatient mental health services. *See* TEX. HEALTH & SAFETY CODE § 574.035(a), (b). Section 574.035 requires the trial court to specify certain criteria in its order, if it orders inpatient mental health services. *See* TEX. HEALTH & SAFETY CODE § 574.035(c). Section 574.035 also requires the trial court to specify in its order for extended mental health services that the order will be in effect for twelve months, which the trial court did in its order for Campbell's extended mental

health services, even though the language of article 46.03 contains no such requirement. *See* TEX. HEALTH & SAFETY CODE § 574.035(h); TEX.CODE CRIM. PROC. art. 46.03. Section 574.036 states that, if the person in question satisfies the commitment criteria of section 574.035(b), the trial court may order the person to participate in outpatient mental health services. *See* TEX. HEALTH & SAFETY CODE § 574.036(e)(2).

The language of article 46.03 itself does not state who can be ordered to provide outpatient mental health services to persons who previously have been found not guilty by reason of insanity. *See* TEX.CODE CRIM. PROC. art. 46.03. Though article 46.03 refers to the trial court issuing an order requiring the person to participate in outpatient mental health services, the language of article 46.03 itself does not require that the court designate in its order the person responsible for providing these outpatient mental health services. *See id.* Article 46.03 does require that the trial court conduct the proceeding to determine whether it should order Campbell to participate in outpatient mental health services pursuant to the provisions of the Texas Mental Health Code. *See* TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(5). This does not mean that the entire Texas Mental Health Code applies, but we conclude that, under the unambiguous language of the statutes in question, section 574.037 is pertinent and applicable to an article 46.03, section 4(d)(5) proceeding. *See Campbell,* 85 S.W.3d at 182.

On appeal, the State argues that section 574.037 does not apply to an article 46.03, section 4(d)(5) proceeding because, although article 46.03(4)(d) incorporates provisions from the Texas Mental Health Code at least five different times, it only incorporates provisions regarding procedural matters. The State also claims that, under opinions from the Texas Supreme

Court and from this court in two prior appeals by Campbell, section 574.037 does not apply because it does not direct how the trial court should conduct the hearing under article 46.03, section 4(d)(5). *See Campbell,* 85 S.W.3d at 183–84; *Campbell,* 118 S.W.3d at 802–03. First, we find no case holding that article 46.03 incorporates only provisions regarding procedural matters. Rather, article 46.03, section 4(d)(5) states that the trial court's hearing must be "conducted pursuant to the provisions of the Mental Health Code." *See* TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(5). The Texas Supreme Court has stated that all provisions of the Mental Health Code that pertain to an article 46.03, section 4(d)(5) proceeding should be applied to those proceedings. *See Campbell,* 85 S.W.3d at 182. The Texas Supreme Court has not stated that only procedural provisions of the Mental Health Code apply to such proceedings. *See id.*

This court already has determined that article 46.03, section 4(d)(5) incorporates the requirements of section 574.035. *See Campbell,* 118 S.W.3d at 802. This section prevents the trial court from ordering extended outpatient mental health services unless the court finds that appropriate mental health services are available and unless the finder of fact makes certain findings. *See* TEX. HEALTH & SAFETY CODE § 574.035(b); *Campbell,* 118 S.W.3d at 802. Section 547.037(a) requires that a court ordering outpatient mental health services identify a person responsible for those services and that this person either consent to provide these services or serve as the facility administrator of a department facility or of a community center that provides mental health services in the region in which the committing court is located. *See* TEX. HEALTH & SAFETY CODE § 574.037(a). Section 547.037(a) does direct how the trial court should proceed with its determination under article 46.03,

section 4(d)(5). Among other things, section 547.037(a) requires that the trial court obtain the consent of a person such as Evans to be responsible for providing outpatient mental health services. *See id.* This statutory framework enables the trial court to obtain necessary information and direction both in determining whether mental health services are available and in determining who should be ordered to provide these services.

Regarding the State's argument concerning precedent from Campbell's prior appeals, the Mental Health Code requires that two medical certificates be filed with the court before a court may hold a hearing on an application for court-ordered mental health services. *See* TEX. HEALTH & SAFETY CODE §§ 574.009, 574.011. This requirement conflicts with article 46.03, section 4(d)(5), which requires only one certificate. *See* TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(5). Both this court and the Texas Supreme Court have held that these prerequisites of the Mental Health Code do not apply to a proceeding under article 46.03, section 4(d)(5) because they do not pertain to how a trial court should conduct such a proceeding. *See Campbell,* 85 S.W.3d at 180–83; *Campbell,* 68 S.W.3d at 754–58. However, the result of this same analysis is different as to section 574.037, because this section does pertain to the trial court's handling of the article 46.03, section 4(d)(5) proceeding.

The State acknowledges that article 46.03 does not expressly give the trial court the power to order Evans to provide outpatient mental health services, but asserts that this power should be implied from the trial court's express power to order Campbell to participate in outpatient mental health services. The State further argues that article 46.03 is the more specific statute, so it controls, rather than the Texas Mental Health Code, which the

State asserts is the more general statute. These arguments do not affect our analysis above. We refuse to imply an ability to violate the requirements of section 574.037 if it applies to the trial court's order for outpatient mental health services in this case. Further, the doctrine regarding the construction of specific and general statutes comes into play only when there is a conflict between these statutes. *See* TEX. GOV.CODE § 311.026. There is no conflict here. Article 46.03 does not address who may be ordered to provide outpatient services, and it incorporates the provisions of the Mental Health Code regarding a proceeding to determine whether outpatient mental health services should be ordered and who should be ordered to provide them. Therefore, unlike the situation the Texas Supreme Court confronted when trying to resolve the conflict created by the prerequisite of two medical certificates, in this case there is no conflict between article 46.03 and section 574.037. *See Campbell,* 85 S.W.3d at 180–83; *Campbell,* 68 S.W.3d at 754–58. The State also claims that an analysis of the various amendments to article 46.03 over the years shows a trend by the Legislature toward giving the acquitting court expanded authority and more options for handling violent insanity acquittees. Even if the amendments to article 46.03 have added to the acquitting court's authority and options in this regard, this general trend does not change the fact that the Legislature also has made pertinent provisions of the Mental Health Code applicable to proceedings under article 46.03, section 4(d)(5).

■ The State also makes the following additional arguments:

(1) If section 574.037 applies, then so would section 574.008(d), and the latter section conflicts with article 46.03; and

(2) From 1983 to 2001, article 46.03 required the acquitting court to retain jurisdiction over acquittees such as Campbell; therefore, section 574.037 cannot apply to article 46.03, section 4(d)(5) proceedings, because an acquitting court under this version of the statute would be precluded from ordering outpatient services outside of its own region.

In assessing these arguments, we note that in 2001, the Legislature amended article 46.03 to provide that "[i]f a defendant is found not guilty by reason of insanity in the trial of a criminal offense and the court determines that the defendant committed an act, attempt, or threat of serious bodily injury to another person, the trial court may transfer the defendant to the appropriate court for civil commitment proceedings on receipt of that court's written consent to the transfer or may retain jurisdiction over the defendant as provided by this subdivision." Act of May 22, 2001, 77th Leg., R.S., ch. 985, § 1, 2001 Gen. Tex. Laws 2151, 2152 (codified at TEX. CODE CRIM. PROC. art. 46.03, § 4(d)(1)). Because the trial court found Campbell not guilty by reason of insanity before September 1, 2001, this amendment to article 46.03 does not apply to Campbell. See Act of May 22, 2001, 77th Leg., R.S., ch. 985, § 2, 2001 Gen. Tex. Laws 2151, 2152. For persons found not guilty by reason of insanity between August 29, 1983 and August 31, 2001, article 46.03 requires the acquitting court to retain jurisdiction over acquittees who committed an act, attempt, or threat of serious bodily injury to another person. See id.; Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Gen. Tex. Laws 2640, 2643.

Presuming that the current version of article 46.03 allows but does not require an acquitting court to transfer the commitment case to a court in the county in which outpatient mental health services are or-

dered, as the State asserts, the current version of 46.03 still conflicts with section 574.008(d), which, if it applied, would require rather than permit such a transfer. Compare TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(1) with TEX. HEALTH & SAFETY CODE § 574.008(d). Although the issue is not before us, section 574.008(d) does not appear to apply to a court that has ordered outpatient services under article 46.03 because (1) section 574.008 deals with the general jurisdiction of statutory and county courts to hear applications for court-ordered mental health services and transfers of that jurisdiction after a court has ordered outpatient services in another county; and (2) these provisions do not pertain to a district court's handling of an article 46.03, section 4(d)(5) proceeding. Therefore, as to individuals who were acquitted between 1983 and 2001, and who committed an act, attempt, or threat of serious bodily injury, acquitting courts are required to retain jurisdiction, although these courts are authorized to order an individual outside of the acquitting court's region to provide outpatient services, if that individual consents. See TEX. HEALTH & SAFETY CODE § 574.037; 2001 Gen. Tex. Laws at 2152; 1983 Gen. Tex. Laws at 2693. The current version of article 46.03 may allow a trial court to transfer persons acquitted by reason of insanity on or after September 1, 2001, to another county in which the court has duly ordered that the acquittee receive outpatient mental health services, as the State argues; however, this potential option does not affect our analysis of the applicability of section 574.037.

The State also relies on the following policy arguments:

(1) The trial court should be able to order persons outside its region to provide outpatient mental health ser-

vices so that, as to acquittees who have engaged in violent behavior, appropriate treatment and protection of victims, along with a high level of supervision can be achieved; and

(2) If trial courts cannot order out-of-region individuals to provide outpatient mental health services, acquittees in some smaller counties may be unable to obtain treatment.

Because this court is not a legislative body, we cannot be concerned with pure policy arguments; rather, we must carefully review the statutory language, search for the legislative intent, and strive to give full effect to all of the statutory terms. *See Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984), *superseded by statute on other grounds as stated in Palmer v. The Coble Wall Trust Co.,* 851 S.W.2d 178, 181–82 (Tex.1992). We must find the legislative intent in the statutory language and not elsewhere. *See id.* Our role is not to question the policy choices that inform Texas statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 748 (Tex.2003).

Though article 46.03 certainly expresses an intent to allow acquitting courts to maintain jurisdiction over acquittees such as Campbell, and to order these individuals to receive appropriate mental health services, article 46.03 also incorporates the provisions of the Texas Mental Health Code pertinent to an article 46.03, section 4(d)(5) proceeding. The pertinent provisions of the Texas Mental Health Code reflect a legislative intent that individuals such as Evans not be ordered to provide outpatient services unless they consent. This is a rational statutory policy, and it is not our role to second-guess it. *See McIntyre,* 109 S.W.3d at 748. The applicable statutes permit the trial court to order out-of-region parties like Evans to provide outpatient mental health services; however, section 574.037 requires that the trial court obtain the consent of such persons, which the trial court failed to do in this case.

In addition, the record before us contains no evidence that Harris County MHMRA is currently incapable of providing the services the trial court ordered the Bexar County Parties to provide, and the State asserts in its response in opposition to Evans's petition for writ of mandamus that Harris County MHMRA is currently capable of providing these services. Moreover, the record in this case contains no evidence that any mental health services provider outside of Bexar County refused to consent to provide these services in 2003. Further, as to regions that might not have the ability to provide in-region outpatient mental health services to acquittees such as Campbell, the expressed intent of the Legislature is that the committing courts in these regions seek the consent of mental health service providers in other regions that are capable of providing these services.

We conclude that section 574.037 applied to the trial court's order for extended outpatient mental health services. The trial court did not comply with this section in designating Evans as the person responsible for the ordered services. Therefore, the trial court lacked authority to order the Bexar County Parties to provide the court-ordered outpatient services. Accordingly, we sustain their second issue, reverse the trial court's June 30, 2003 order, and remand for further proceedings consistent with this opinion.[3]

**3.** Because we sustain the Bexar County Parties' second issue, we need not address their other contentions.

**C. Should this court conditionally grant Evans's petition for writ of mandamus?**

 After finding that Evans was willfully disobeying the June 30, 2003 order, the trial court held Evans in contempt and ordered him confined in the Harris County Jail. Although the trial court did not set aside its judgment of contempt, it later released Evans from confinement. There is no appeal from a contempt judgment, and a writ of habeas corpus is not available because Evans is no longer restrained. Therefore, this court has the ability to exercise mandamus jurisdiction over the contempt judgment. *See Rosser v. Squier*, 902 S.W.2d 962 (Tex.1995); *In re K.S.E.*, 2003 WL 21269585, at *1, n. 2 (Tex.App.-San Antonio Jun.4, 2003, no pet.) (mem.op.). Under section 574.037(a), the trial court lacked authority to order Evans to provide outpatient mental health services. Consequently, the trial court's judgment of contempt against Evans for violating that order is void.[4] *See Ex parte Evans*, 939 S.W.2d 142, 144 (Tex.1997) (holding that judgment of contempt was void because it punished relator for violating order that trial court lacked authority to enter); *In re Villanueva*, 56 S.W.3d 905, 908–10 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding) (holding provision in contempt order void because it punished relator for violating order that trial court lacked authority to enter). Accordingly, we conclude that Evans is entitled to mandamus relief, and we conditionally grant his petition for writ of mandamus to the extent it seeks an order commanding the trial court to vacate its contempt judgment of August 19, 2003. We are confident the trial court will vacate this contempt judg-

ment. The writ will issue only if the trial court fails to do so.

---

4. In its response to Evans's petition for writ of mandamus, the State agrees that, if the trial court lacked authority to order Evans to provide the outpatient mental health services, then the orders entered on May 27, 2003 and June 30, 2003 are void.